**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David L. Mazet,<br><br>    Plaintiff,<br><br>vs.<br><br>Halliburton Co. Long-Term Disability Plan; Hartford Life and Accident Insurance Co.,<br><br>    Defendants. | No. CV-04-0493-PHX-FJM<br><br>**ORDER** |

The court has before it plaintiff's motion for summary judgment (doc. 57), defendants' response and cross-motion for summary judgment (doc. 62), plaintiff's response and reply (doc. 66), and defendants' reply (doc. 73). We also have before us plaintiff's two motions for reconsideration (docs. 69, 70).

**I**

This case involves a dispute over long-term disability ("LTD") benefits under an employee-benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The plaintiff, David Mazet, was injured on the job in August of 2000. He made a claim for LTD benefits under the plan provided by his employer, Halliburton Company (the "Plan"). Halliburton funded its LTD benefits through a group

insurance policy from Hartford Life and Accident Insurance Company ("Hartford"). Hartford also served as Plan administrator.

The Plan provides monthly benefits if a participant becomes "disabled." During the first 24 months of benefits, "disabled" means that the employee is unable to perform his "own occupation." After the initial 24-month period, the definition of "disabled" becomes more stringent–the employee must show that he is unable to perform "any occupation."

Hartford determined that Mazet was eligible for benefits during the "own occupation" period, and calculated his pre-disability monthly earnings at $4,524.09. Under the terms of the Plan, Mazet received 60% of his pre-disability earnings, or $2,714.45 per month. Hartford discontinued benefits after the "own occupation" period, concluding that Mazet did not qualify as "disabled" under the more restrictive "any occupation" standard.

Mazet then filed this action. On cross-motions for judgment on the administrative record, we first determined that an abuse of discretion standard of review applied (doc. 38). We then held that Hartford did not abuse its discretion in deciding that Mazet did not qualify for benefits under the "any occupation" standard (40). We also remanded to Hartford the issue of whether it properly calculated Mazet's pre-disability earnings when determining his benefits during the initial 24-month "own occupation" period. Id.

On remand, Hartford concluded that Mazet's deferred compensation does not qualify as "Monthly Rate of Basic Earnings," and that there was no underpayment of benefits during the "own occupation" period. PSOF, ex. 1.

**II**

We previously held that because the Plan document unambiguously granted Hartford discretion in making claim decisions, the abuse of discretion standard applied (docs. 38, 40). Mazet now asks us to reconsider that conclusion based on Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006). Mazet contends that a *de novo* standard of review is appropriate because Hartford failed to respond to his administrative appeal within the time limits imposed by the regulations. See 29 C.F.R. § 2560.503-1(h). Our decision to apply an abuse of discretion standard was based on Gatti v. Reliance Std. Life Ins. Co., 415 F.3d 978

1  (9th Cir. 2005), which held that "procedural violations of ERISA do not alter the standard
2  of review unless those violations are so flagrant as to alter the substantive relationship
3  between the employer and employee." Id. at 985. The court specifically rejected the same
4  argument advanced by Mazet here and held that "violations of the time limits established in
5  29 C.F.R. § 2560.503-1(h) are insufficient to alter the standard of review." Id. at 982.
6  Abatie does not modify this holding. Abatie's description in dicta of Jebian v. Hewlett-
7  Packard Co., 349 F.3d 1098 (9th Cir. 2003), does not overrule Gatti's express limitation of
8  Jebian. See Gatti, 415 F.3d at 985; see also Abatie, 458 F.3d at 972. We affirm our reliance
9  on Gatti and deny Mazet's motions for reconsideration (docs. 69, 70).

## III

11  Hartford was directed to consider on remand whether it properly calculated Mazet's
12  pre-disability earnings when determining his benefits during the initial 24-month disability
13  period (doc. 40 at 4). Under the Plan, a participant's LTD benefits are based on "Pre-
14  disability Earnings," which in turn are derived from the "Monthly Rate of Basic Earnings."
15  Admin. Record, ex. 1 at POL-00025. "Monthly Rate of Basic Earnings" is defined as
16  "regular monthly pay from the Employer, but not: (1) overtime pay, (2) any fringe benefit
17  or extra compensation, (3) commissions, or (4) bonuses." Id. With circular reasoning,
18  Hartford concluded that Mazet's "[d]eferred compensation does not qualify as 'Monthly Rate
19  of Basic Earnings' because [his] deferred compensation is not [his] regular monthly pay from
20  [his] employer." PSOF, ex. 1. It explained that "in accordance with the definition of
21  Monthly Rate of Basic Earnings . . . 'deferred compensation' is not considered when
22  calculating [his] Monthly Rate of Basic Earnings." Id.

23  Under the abuse of discretion standard, we consider whether the administrator "(1)
24  renders a decision without explanation, (2) construes provisions of the plan in a way that
25  conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of
26  fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178
27  (9th Cir. 2005). Mazet contends that Hartford abused its discretion in concluding that
28  deferred compensation is excluded from the calculation of Monthly Rate of Basic Earnings.

He claims that his contributions to his 401(k) plan, reported as deferred compensation on his W-2 wage and tax statement, are part of his regular earnings and should have been included in the calculation. We agree. Hartford relies solely on the Plan's definition of "Monthly Rate of Basic Earnings" to support its conclusion. That definition, however, specifies only four exclusions from a claimant's "regular monthly pay"–overtime pay, fringe benefits or extra compensation, commissions, or bonuses. Deferred compensation in the form of elective contributions to a 401(k) plan does not fit within any of these listed exclusions. Therefore, Hartford's only justification for excluding deferred compensation conflicts with the plain language of the Plan. To the extent the Plan is ambiguous as to whether deferred compensation is properly excluded, we must resolve that ambiguity in favor of Mazet and conclude that it is not. See, e.g., Simkins v. NevadaCare, Inc., 229 F.3d 729, 735 (9th Cir. 2000).

Also supporting our conclusion that Hartford abused its discretion is the inherent conflict of interest presented by Hartford's position as both the Plan administrator and the funding source for benefits. See Abatie, 458 F.3d at 965 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 957 (1989)). "[S]uch an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers." Id. at 966. Here, a conflict of interest is evidenced by Hartford's failure to adequately investigate Mazet's claim and to obtain the necessary evidence to make its calculation. See id. at 968. Hartford ignored its own form which asked Halliburton to supply a copy of Mazet's W-2 to determine benefit eligibility. PSOF, ex. 4. It had copies of Mazet's W-2 statements before remand, see, e.g., doc. 22, ex. 6, but now argues that because Mazet did not provide the statements again, specifically for purposes of remand, those statements are not part of the administrative record and cannot be considered by us.[1] Hartford's disregard of relevant documents on remand

---

[1] This position is belied by Hartford's reference to those W-2 statements in its decision on remand. PSOF, ex. 1. At all events, our conclusion that Hartford abused its discretion

- 4 -

evinces a conflict between its obligation as a fiduciary and its self-interest as an insurance company and further supports our conclusion that Hartford abused its discretion.

**IV**

Mazet argues that the faulty calculation of his pre-disability earnings also affects Hartford's conclusion that he is not eligible for continuing benefits during the "any occupation" period. A Plan participant is eligible for benefits during the "any occupation" period if he cannot perform any occupation for which he is qualified that has an earnings potential of more that 60% of his Indexed Pre-disability Earnings. Admin. Record, ex. 1 at POL-00024.[2] Hartford is instructed on remand to determine Mazet's eligibility for continuing benefits during the "any occupation" period based on the revised calculation of his pre-disability earnings as discussed above. During the initial claims process, Hartford determined that Mazet was capable of performing five occupations, all of which had monthly earnings potential of $3,103.03. DSOF ¶ 29. This information remains relevant to the continuing benefits eligibility determination.

**V**

In sum, we conclude that Hartford abused its discretion in excluding deferred compensation from the Monthly Rate of Basic Earnings calculation. We remand to the administrator with instructions to recalculate this amount, including deferred compensation in the form of Mazet's elective contributions to his 401(k) plan. Hartford shall consider W-2 statements and any other relevant documents in making this calculation. We note that Hartford originally calculated Mazet's pre-disability earnings at $4,524.09. On remand, it calculated the amount at $4,228.00. Defendants simply state that "[t]here is no readily apparent explanation for the discrepancy." Defendants' Response at 4. Hartford is instructed

---

in excluding deferred compensation from the monthly basic earnings calculation is not dependent on W-2 statements, but is based on the language of the Plan itself.

[2]"Indexed Pre-disability Earnings" are defined as "Pre-disability Earnings adjusted annually by adding the lesser of: (1) 10%; or (2) the percentage change in the Consumer Price Index." Admin. Record, ex. 1 at POL-00025.

- 5 -

on remand to verify the correct pre-disability earnings as required by the Plan and to provide documentary support for that calculation.  It shall also determine Mazet's eligibility for continuing benefits during the "any occupation" period based on this revised calculation. Hartford shall promptly [in no event longer than 90 days from the date of this Order] pay Mazet any difference between the revised calculation and the amount he has already received in benefits.  We admonish Hartford to fairly and accurately perform its obligations.  Its decision on the first remand is utterly irrational and counsel's attempts to justify it press the limits of appropriate advocacy.

**IT IS ORDERED DENYING** defendants' cross-motion for summary judgment (doc. 62).

**IT IS FURTHER ORDERED DENYING** plaintiff's motions for reconsideration (docs. 69, 70).

**IT IS FURTHER ORDERED GRANTING** plaintiff's motion for summary judgment and remanding this case to the administrator for further proceedings consistent with this Order (doc. 57).

All the claims of all the parties having now been adjudicated, the clerk shall enter final judgment.

DATED this 5th day of February, 2008.

Frederick J. Martone
United States District Judge

- 6 -