**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David L. Mazet,<br><br>  Plaintiff,<br><br>vs.<br><br>Halliburton Company Long-Term Disability Plan, et al.,<br><br>  Defendants. | No. CV-04-0493-PHX-FJM<br><br>**ORDER** |

**I**

This case involves a dispute over long-term disability ("LTD") benefits under an employee-benefits plan governed by the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiff David Mazet was injured on the job in August of 2000. He made a claim for LTD benefits under a plan provided by his employer, Halliburton Company, and administered by Hartford Life and Accident Insurance Company (the "Plan"). The Plan provided for monthly benefits if a participant becomes "disabled." During the first 24 months of benefits, "disabled" means that the employee is unable to perform his "own occupation." After the initial 24-month period, a participant is entitled to

continuing benefits only if he is unable to perform "any occupation."[1]

Hartford determined that Mazet was eligible for benefits during the "own occupation" period and calculated his pre-disability monthly earnings at $4,524.09. Under the terms of the Plan, Mazet received 60% of his pre-disability earnings, or $2,714.46 per month for 24 months. On February 26, 2003, at the end of the 24-month "own occupation" period, Hartford reevaluated Mazet's disability status and found that he was capable of performing sedentary work, such as assignment clerk, repair order clerk, jacket preparer, fabric and accessories estimator, and weave defect charting clerk, with estimated median monthly earnings of $3,101.03. Because the estimated earnings of these occupations exceeded 60% of Mazet's pre-disability earnings, Hartford concluded that Mazet did not qualify as "disabled" under the more restrictive "any occupation" standard, and denied continuing benefits. Mazet filed this action challenging Hartford's denial of benefits.

On August 15, 2005, we held that Hartford did not abuse its discretion in deciding that Mazet did not qualify for benefits under the "any occupation" standard (doc. 40). Because we applied an abuse of discretion standard, we rejected Mazet's proffer of exhibits outside the administrative record.

We remanded to Hartford, however, the issue of whether it had properly calculated Mazet's pre-disability earnings when determining his benefits during the initial 24-month "own occupation" period. Id. On remand, Hartford concluded that Mazet's deferred compensation did not qualify as "basic earnings" and therefore refused to include that income in calculating Mazet's benefits during the "own occupation" period. Mazet again appealed.

On review, we held that Hartford abused its discretion in omitting deferred compensation from the calculation of Mazet's pre-disability earnings and again remanded to Hartford to recalculate Mazet's "own occupation" benefits (doc. 76). We also directed Hartford to determine Mazet's eligibility for continuing benefits during the "any occupation"

---

[1] The Plan defines "any occupation" as "an occupation: (1) for which you are qualified by education, training or experience; and (2) that has an earnings potential greater than an amount equal to 60% of your Indexed Pre-Disability Earnings."

- 2 -

1  period based on the revised calculation. Id. Hartford recalculated the pre-disability earnings,
2  this time including deferred compensation in the calculation, and paid Mazet an additional
3  $11,017.82 in "own occupation" benefits and interest. It concluded, however, that even with
4  the revised pre-disability earnings calculation, Mazet was not eligible for "any occupation"
5  benefits.

6  Mazet then filed another motion to remand with this court, this time arguing that he
7  was entitled to "indexed benefits" that increased with the cost of living. (Doc. 78 at 3 ("both
8  'own occupation' and 'any occupation' *benefits* are required to be adjusted according to the
9  CPI") (emphasis added)). When defendants responded that Mazet was not entitled to
10 "indexed benefits," but only "indexed" pre-disability earnings, Mazet, apparently realizing
11 his mistake, instead argued for the first time in a sur-response that Hartford's calculation of
12 the indexed pre-disability earnings was incorrect. We concluded that Hartford did in fact
13 index Mazet's pre-disability earnings for purposes of determining his eligibility for continued
14 benefits. We refused to consider Mazet's new challenge to Hartford's indexed calculation
15 because Mazet did not challenge this calculation in either his motion or reply. (Doc. 95 at
16 n.3). Mazet appealed.

17  Although Mazet raised multiple issues on appeal, the Ninth Circuit considered only
18 the proper standard of review. The court held that, although the Plan expressly provided that
19 Hartford "reserves the right to determine if your proof of loss is satisfactory," the Plan does
20 not unambiguously provide discretion to the administrator. It remanded the case, directing
21 us to apply a *de novo* standard in reviewing Hartford's benefits decision. In light of the *de*
22 *novo* review, the court also directed us to reconsider whether Mazet's proffered additional
23 evidence, not contained in the administrative record, is admissible.

**II**

25  In January 2003, as Mazet's benefits during the "own occupation" period were about
26 to expire, Hartford considered whether Mazet was eligible for continuing benefits during the
27 "any occupation" period. A Plan participant is eligible for benefits during the "any
28 occupation" period if he cannot perform any occupation for which he is qualified that has an

- 3 -

1  earnings potential greater than 60% of his indexed pre-disability earnings. Following our
2  February 5, 2008 order (doc. 76), Hartford recalculated Mazet's pre-disability earnings and
3  then "indexed" these earnings to reach an amount of $5,149.18. Therefore, according to the
4  terms of the Plan, Mazet would not qualify for benefits during the "any occupation" period
5  if his earnings potential exceeded 60% of his indexed pre-disability earnings, or $3,089.51.

6  On January 30, 2003, Hartford prepared an Employability Analysis Report ("EAR")
7  analyzing Mazet's ability to work based on his functional capacities, skills, and education.
8  It determined that Mazet was capable of performing six occupations contained in the
9  Dictionary of Occupational Titles ("DOT") category of "Production Planning and Expediting
10 Clerk" at the sedentary level. It concluded that, based on wage data derived from "the 2001
11 Estimated Median Wage following an adjustment to reflect estimated wages for 2003," these
12 jobs would provide monthly estimated income of $3,103.03. The EAR further explained that
13 the source of the wage data was calculated "Using [U.S. Department of Labor Occupational
14 Employment Statistics ("OES")] data." Because Mazet's 2003 earnings potential ($3,103.03)
15 exceeded 60% of his indexed pre-disability earnings ($3,089.51),[2] Hartford concluded that
16 Mazet was not eligible for benefits during the "any occupation" period.

17 Mazet argues that Hartford relied on outdated job data and incorrectly calculated the
18 median wage for the cited occupations. He contends that this is a pivotal issue given that
19 Hartford's decision to deny continuing benefits was based primarily on the wage data
20 purporting to show potential wages exceeding 60% of Mazet's indexed pre-disability
21 earnings. Mazet complains that Hartford did not identify any published data to support its
22 wage assumptions and did not explain the method it used to "adjust" the 2001 estimated
23 median wage to reflect 2003 wages.

24 The 2001 OES wage data was the most recent data available at the time the benefits
25 decision was made in February 2003. As this litigation progressed, Mazet sought to

---

27 [2]Hartford originally calculated 60% of Mazet's pre-disability earnings at $2,714.46.
   Following our remand, it revised that calculation to $3,089.51. Hartford concluded that in
28 either case, the amount was less than his estimated 2003 earnings potential.

- 4 -

1 introduce the actual published 2002 OES wage data, showing that the estimated median wage
2 for the category of occupations defined as "production, planning, and expediting clerks" was
3 $2,804.17 per month. Mazet later sought to introduce the actual published 2003 OES data,
4 indicating that the estimated median wage for this category of occupations was $2,938.33 per
5 month. Doc. 81, ex. 3. Mazet now contends that Hartford's unsubstantiated conclusion that
6 his 2003 earnings potential was $3,103.03 is contrary to the published data. He argues that
7 because 60% of his indexed pre-disability earnings ($3,089.51) is greater than either the
8 actual 2002 or 2003 wage data, he has clearly met the definition of "disabled" during the
9 "any occupation" period and is therefore entitled to benefits.

10 "[I]n most cases," even on *de novo* review of an administrator's benefits decision, we
11 will consider "only the evidence that was before the plan administrator." Kearney v.
12 Standard Ins. Co., 175 F.3d 1084, 1091 (9th Cir. 1999). Underlying this restriction is
13 ERISA's goal of providing for the resolution of benefit disputes inexpensively and
14 expeditiously, and a recognition that federal district courts should not function "as substitute
15 plan administrators." Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir.
16 1993) abrogated on other grounds. Nevertheless, an exception exists under *de novo* review
17 "when circumstances clearly establish that additional evidence is necessary to conduct an
18 adequate *de novo* review of the benefit decision." Mongeluzo v. Baxter Travenol Long Term
19 Dis. Ben. Plan, 46 F.3d 938, 943-44 (9th Cir. 1995) (quoting Quesinberry v. Life Ins. Co. of
20 N. Am., 987 F.2d 1017, 1025 (4th Cir. 1993)).

21 Although we suggested that on remand that Hartford's 2003 EAR earnings potential
22 calculation of $3,101.03 "remains relevant to the continuing benefits eligibility
23 determination," (doc. 76 at 5), Hartford nevertheless performed an "updated assessment," this
24 time relying on 2006 OES wage data, and concluding that Mazet's earnings potential in 2003
25 was $3,218.80 (doc. 89). Hartford provided no explanation as to how 2006 wage data is
26 relevant to Mazet's 2003 earnings potential. Mazet again asks us to consider the actual
27 published 2002 and 2003 OES wage data in order to determine his 2003 earnings potential.
28 We conclude that circumstances in this case establish that additional evidence is

- 5 -

1 necessary to conduct an adequate *de novo* review. In January 2003, at the time the benefits 2 decision was made, Hartford did not have the benefit of the then-prevailing wage data in 3 order to more accurately determine Mazet's estimated earnings potential. Instead, Hartford 4 relied on what was the most recent data available–the 2001 wage data–and, without 5 explanation, "adjusted" this data to reflect 2003 wages. Throughout the course of this 6 protracted litigation, we now know that Hartford's wage assumptions were incorrect. Mazet 7 argued at the time of his initial administrative appeal that Hartford's wage assumptions were 8 unsubstantiated. But because Hartford did not consider the appeal, Mazet did not have the 9 opportunity to submit updated wage information during the administrative process.

10 In Opeta v. Northwest Airlines Pension Plan for Contract Employees, 484 F.3d 1211, 11 1217 (9th Cir. 2007), the court cited a "non-exhaustive list of exceptional circumstances" in 12 which the consideration of evidence outside the administrative record may be necessary, 13 including "circumstances in which there is additional evidence that the claimant could not 14 have presented in the administrative process." Mazet could not have presented the 15 2002/2003 wage data during the administrative process, both because the data was not 16 initially available and because Hartford failed to decide Mazet's arguments on appeal.

17 Mazet's proposed wage evidence is not "cumulative of what was presented to the plan 18 administrator, or . . . simply better evidence than the claimant mustered for the claim review." 19 See Quesinberry, 987 F.2d at 1027. Instead, it reliably contradicts Hartford's wage 20 determination and provides the best evidence available that Mazet's earnings potential for 21 2003 was $2,938.33 per month. While it would be inappropriate to reopen a finalized 22 administrative or judicial proceeding in order to present more recent evidence, this case is 23 unique in that it has been in the course of litigation for more than 6 years. To now ignore this 24 new evidence that wholly undermines Hartford's benefits decision would prevent us from 25 conducting an adequate *de novo* review. Because 60% of Mazet's indexed pre-disability 26 earnings ($3,089.51) is greater than his 2003 earnings potential ($2,938.33), Mazet meets the 27 definition of "disabled" during the "any occupation" period and is therefore entitled to 28 benefits.

### III

**IT IS ORDERED REMANDING** this case to the administrator for an immediate calculation and payment of benefits. The clerk shall enter final judgment.

DATED this 15th day of September, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge